IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SMEEZ, INC. d/b/a BIG DADDY'S DISCO DINER, *individually and on behalf of all others similarly situated*, | )<br>)<br>)<br>) |
| Plaintiff, | ) Case No. 20-cv-1132-DWD |
| vs. | )<br>)<br>) |
| BADGER MUTUAL INSURANCE COMPANY, | )<br>)<br>) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

On October 1, 2020, Plaintiff Smeez Inc. filed this putative class action in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois. Smeez, who purchased a business insurance policy from Defendant Badger Mutual Insurance Company, owns a restaurant and bar that was impacted financially by the Covid-19 pandemic and the "stay home" and occupancy limit orders issued in response. By motion dated December 1, 2020, Badger Mutual seeks dismissal of Plaintiff's complaint. (Doc. 17). Plaintiff filed a response (Doc. 30) and a supplement (Doc. 32), and Defendant responded to each (Docs. 34, 35). For the reasons delineated below, the Court grants Defendant's motion to dismiss.

**FACTUAL ALLEGATIONS AND THE INSURANCE POLICY**

Smeez, Inc. operates Big Daddy's Disco Diner, a restaurant and bar located in Belleville, Illinois. Due to "stay home" and closure orders issued by the State of Illinois

in response to the Covid-19 pandemic, Plaintiff's restaurant was closed to all in-person dining and consumption beginning in March 2020. Limited service through take-out and delivery options was permitted at first. Over time, Smeez was able to open for limited in-person dining under the Restore Illinois plan. As long as St. Clair County remains in Phase 4, Smeez may offer in-person dining, though the capacity of the restaurant is subject to capacity limits.

Smeez purchased a comprehensive commercial liability and property insurance from Badger Mutual that provided coverage for the period from March 15, 2020, through March 15, 2021.[1] The policy covers business income and extra expense for "direct physical loss to covered property at the premises described on the declarations caused by a covered peril." (Doc. 18-1, p. 38). It contains a virus or bacteria exclusion and a civil authority exclusion, but Plaintiff's complaint alleges that the exclusions do not preclude coverage for its business losses tied to the closure orders and restrictions.

Under the policy's business income and extra expense coverage, Badger agreed:

1. **We** will pay for the actual loss of Business Income **you** sustain due to the necessary suspension of **your operations** during the **period of restoration**. The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

---

[1] The insurance policy at issue is discussed in, but not attached to, Plaintiff's complaint. Defendant attached the policy as an exhibit to its memorandum in support of its motion to dismiss (Doc. 18-1). Ordinarily, a court may not consider documents other than the operative complaint and any attachments thereto without converting a motion under Rule 12(b)(6) to a motion for summary judgment under Rule 56. An exception exists, however, where documents, like the insurance policy, "are central to the complaint and are referred to in it," provided that the information is "properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Here, that exception applies, so the Court will consider the policy (Doc. 18-1) as provided by Defendant.

(Doc. 18-1, p. 35)(emphasis in original). If the loss is otherwise covered, the Virus or Bacteria Exclusion provides:

> The additional exclusion set forth below applies to all coverages, coverage extensions, supplemental coverages, optional coverages, and endorsements that are provided by the policy to which this endorsement is attached, including, but not limited to, those that provide coverage for property, earnings, extra expense, or interruption by civil authority.
>
> 1. The following exclusion is added under Perils Excluded, item 1.:
>
>    **Virus or Bacteria –**
>
>    **We** do not pay for loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.
>
>    This exclusion applies to, but is not limited to, any loss, cost, or expense as a result of:
>
>    a. any contamination by any virus, bacterium, or other microorganism; or
>
>    b. any denial of access to the property because of any virus, bacterium, or other microorganism.

(Doc. 18-1, p. 14)(emphasis in original). Under the excluded perils, the policy also declines coverage for losses caused by orders of any civil authority:

> 1. **We** do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.
>
>    …
>
>    c. **Civil Authority – We** do not cover loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

> **We** cover loss result from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this policy.

(Doc. 18-1, p. 30)(emphasis in original).

Plaintiff's complaint alleges that the civil authority exclusion does not apply because Plaintiff's property was not seized, confiscated, destroyed, or quarantined. Plaintiff also alleges that the losses were caused by measures taken by the State of Illinois to prevent the spread of Covid-19, not due to the virus being detected at Plaintiff's insured property, negating the applicability of the virus or bacteria exclusion. Smeez first reported a loss of business income to Badger Mutual on March 16, 2020. Badger Mutual denied coverage of the claim in a letter dated May 13, 2020, citing the civil authority and virus exclusions. Smeez alleges that the denial letter was, in essence, a form letter and that the insurance claim was not considered seriously before being denied.

Smeez seeks to bring three claims on behalf of a class of Illinois restaurants with similar insurance policies issued by Badger Mutual and who made claims for lost business income that were denied. Smeez alleges that Badger Mutual has breached their contract by failing to cover the business losses caused by the Covid-19 closure orders. Smeez also alleges that in refusing coverage, Badger Mutual has breached the covenants of good faith and fair dealing and has acted in bad faith.

## LEGAL STANDARD

A complaint must include enough factual content to give the opposing party notice of what the claim is and the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 698 (2009). To satisfy the

notice-pleading standard of Rule 8, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" in a manner that provides the defendant with "fair notice" of the claim and its basis. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)(citing *Twombly*, 550 U.S. at 555 and quoting Fed. R. Civ. P. 8(a)(2)). In ruling on a motion to dismiss for failure to state a claim, a court must "examine whether the allegations in the complaint state a 'plausible' claim for relief." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)(citing *Iqbal*, 556 U.S. at 677-678). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," rather than providing allegations that do not rise above the speculative level. *Id.*

## ANALYSIS

"[I]nterpretation of an insurance policy is a matter of state law." *Windridge of Naperville Condo. Assoc. v. Philadelphia Indemnity Ins. Co.*, 932 F.3d 1035, 1039 (7th Cir. 2019). The parties agree that Illinois law controls the outcome of their dispute. Under Illinois law an "insurance policy is a contract … . [T]he general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Id.* (quoting *Hobbs v. Hartford Insurance Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005)). As the Supreme Court of Illinois has explained, in this context, a court's "primary objective is to ascertain and give effect to the intention of the parties, as expressed in the policy language. If the policy language in unambiguous, the policy will be applied as written, unless it contravenes public policy." *Hobbs*, 823 N.E.2d at 564. Whether there is an ambiguity "turns on whether the policy language is subject to more than one reasonable interpretation." *Id.* An ambiguity exists where "policy language is

subject to more than one reasonable interpretation. Although 'creative possibilities' may be suggested, only reasonable interpretations will be considered." *Id.* (citation omitted).

Badger Mutual argues that there is no coverage for Smeez's lost or diminished income because there has not been a "direct physical loss of or damage to" property at the business. In the alternative, Defendant suggests that, even if Plaintiff had adequately pleaded the direct loss or damage, the civil authority and virus or bacteria exclusions bar coverage. Smeez counters that Badger Mutual's interpretation of the phrase "direct physical loss of or damage to" property equates "physical loss" with "damage," which cannot be permitted because it would render one of the terms superfluous. Instead, Plaintiff suggests either that the plain meaning should include coverage when property is uninhabitable or unusable for its full intended purpose or that the language is too ambiguous to preclude coverage at this stage.

Defendants point to a line of cases interpreting the phrase "direct physical loss to" as requiring physical, tangible damage to insured property. *See, e.g., Sandy Point Dental, PC v. Cincinnati Insurance Co.*, 2020 WL 5630465 (N.D. Ill. Sept. 21, 2020)(finding that "direct physical loss" unambiguously requires physical harm to the covered premises "rather than forced closure … or adverse business consequences that flow from such closure."). *See also* 10A STEVEN PLITT ET AL., COUCH ON INSURANCE § 148:46 (3d. ed 2020) ("When the structure of the property itself is unchanged to the naked eye, however, and the insured alleges that its usefulness for its normal purposes has been destroyed or reduced, there are serious questions whether the alleged loss satisfies the policy trigger. … The requirement that the loss be 'physical' … is widely held to exclude alleged losses

that are intangible or incorporeal."). Plaintiff contends that the line of cases cited by Defendant do not apply here because they do not include or consider the disjunctive "or damage" present in the Badger Mutual policy when discussing the meaning of "direct physical loss."

There are courts that agree with Plaintiff's contention that "direct physical loss" should not be interpreted to mean "physical damage." In *Studio 417, Inc. v. Cincinnati Ins. Co.*, a district court in the Western District of Missouri considered coverage for Covid-19-related losses where a policy provided coverage for "accidental physical loss or accidental physical damage" and used both the term "direct loss" and the term "direct damage" in the policy. 478 F.Supp.3d 794, 797 (W.D. Mo. 2020). The plaintiffs included hair salons and restaurants who alleged that it was "likely that customers, employees, and/or other visitors to the insured properties were infected with COVID-19 and thereby infected the insured properties with the virus." *Id.* at 798. Applying Missouri law, the district court weighed whether the terms were superfluous if physical loss was defined to mean damage. The Court ultimately concluded that the policy was ambiguous under Missouri law such that discovery into the degree to which Covid-19 was present on the business's premises was warranted, noting that the ruling was subject to later reversal, as "[s]ubsequent case law in the COVID-19 context, construing similar provisions, and under similar facts, may be persuasive." *Id.* at 805.

A subsequent decision issued in the same district acknowledged the ruling in *Studio 417, Inc.* when faced with a policy with the phrase "direct physical loss of or damage to property" before disagreeing with it and finding no coverage for Covid-19-

related reductions in business income. *See Zwill V, Corp. v. Lexington Ins. Co.*, --- F.Supp.3d ---, 2020 WL 7137110 (W.D. Mo. Dec. 2, 2020). This later decision is more closely tied to the policy terms at issue in this litigation, and, unlike in *Studio 417 Inc.*, Smeez does not allege that the coronavirus was present on its premises. Several district courts within the Seventh Circuit also have reached the same conclusion as the *Zwill* court in cases where the policy language covered direct physical loss or damage, as the Badger Mutual policy does. *See Bend Hotel Development Company, LLC v. Cincinnati Insurance Company*, --- F.Supp.3d --- 2021 WL 271294 (N.D. Ill. Jan. 27, 2021)(finding that Covid-19 virus does not cause "direct physical loss or damage to" covered property and noting that the complaint did not allege a need to restore any physical element of the property such that there was a "period of restoration"); *Crescent Plaza Hotel Owner L.P. v. Zurich American Insurance Company*, 2021 WL 633356 (N.D. Ill. Feb. 18, 2021)(dismissing for failure to allege "direct physical loss or damage to" covered hotel); *Bradley Hotel Corp. v. Aspen Specialty Insurance Company*, --- F.Supp.3d ---, 2020 WL 7889047 (N.D. Ill. Dec. 22, 2020)(Covid-19-related losses were not caused by "direct physical loss of or damage to property).

In addition to these decisions, this Court recently considered whether "stay home" orders and the Covid-19 pandemic caused direct physical loss to restaurants under Illinois law and rejected the arguments raised by Plaintiff here. *TJBC, Inc. v. Cincinnati Insurance Company, Inc.*, 2021 WL 243583 (S.D. Ill. Jan. 25, 2021). In dismissing the case, the Court noted that many courts located in Illinois have rejected claims similar to those brought here and rejected arguments that the loss of functionality of restaurants due to in-person dining limits constituted a direct physical loss of property. Instead, the

undersigned found that an "alteration in appearance constitutes physical, tangible damage," which is required to give rise to coverage, and intangible, diminutions in value are not physical losses. *See id.* at \*4 (quoting *Windridge*, 932 F.3d at 1040 n.4 and citing *Cincinnati Ins. Co. v. Taylor-Morley, Inc.*, 556 F.Supp.2d 908, 917 (S.D. Ill. 2008)).

The Court has carefully reviewed the policy at issue and the positions of the parties and finds that the policy language at issue is not ambiguous. Despite Plaintiff's suggestion that the use of "physical loss of" with the disjunctive "or damage to" creates an ambiguity, there is ample case law to the contrary, and courts should "not strain to find an ambiguity where none exists." *Hobbs*, 823 N.E.2d at 564 (citing *McKinney v. Allstate Insurance Co.*, 722 N.E.2d 1125 (Ill. 1999)). While courts throughout the country reach different conclusions when weighing dismissal of claims like Plaintiff's, including in the *Henderson Road* ruling that Plaintiff submitted a supplement to its response,[2] the undersigned is persuaded by the decisions of the many courts within Illinois that have held that reductions in usefulness or in profits due to the Covid-19 pandemic and any related closure orders do not constitute "direct physical loss of or damage to" insured properties.

Without an initial grant of coverage, the Court need not address the applicability of the civil authority or virus or bacteria exclusions, and Plaintiff's claim for breach of contract must be dismissed. As Plaintiff's remaining claims flow from the breach of

---

[2] *See e.g.*, *Henderson Road Restaurant Systems, Inc. v. Zurich American Insurance Co.*, 2021 WL 168422 (N.D. Ohio Jan. 19, 2021)(considering a policy that covered "direct physical loss or damage to" property and finding that it covered losses from the indirect closure of the plaintiffs' restaurants). Plaintiff supplemented their response to Defendant's motion with a brief argument related to this decision. (Doc. 32). Upon review, the Court notes *Henderson Road* is not binding precedent, nor is it persuasive.

contract claim, they must be dismissed as well. The Court further finds that the failure to state a claim is not tied to a pleading deficiency that can be corrected with an amended complaint. As such, the Court will not grant leave to amend.

## CONCLUSION

For the above-stated reasons, Defendant Badger Mutual Insurance Company's motion to dismiss (Doc. [17]) is **GRANTED**. This action is **DISMISSED with prejudice** and without leave to amend. The Clerk of Court shall enter judgment reflecting the dismissal and shall close this case.

**SO ORDERED.**

Dated: March 22, 2021

_____
DAVID W. DUGAN
United States District Judge